Jeffrey M. Goldman (SBN 233840)
  E-mail: goldmanj@pepperlaw.com
**PEPPER HAMILTON LLP**
4 Park Plaza, Ste. 1200
Irvine, CA 92614
Telephone: (949) 567-3547
Facsimile: (866) 728-3537
Attorneys for GEOFFREY FRIEDMAN, JAY
KENNEL, YVETTE MORGAN,
TIM OSBORNE, and WILLIAM WETMORE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| GEOFFREY FRIEDMAN, JAY KENNEL, YVETTE MORGAN, TIM OSBORNE and WILLIAM WETMORE,<br><br>                    Plaintiffs,<br><br>        v.<br><br>GLOBAL PAYMENTS, INC., and HEARTLAND PAYMENT SYSTEMS, LLC,<br><br>                    Defendants. | Case No.  5:18-cv-3038-FMO-FFM<br><br>**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**<br><br>Hearing date:    June 7, 2018<br>Time:              10:00 a.m.<br>Place:             6D<br><br>***Hon. Fernando M. Olguin***<br><br>First Amended Complaint Filed:<br>                    May 7, 2018 |

Pursuant to this Court's Order, the Local Rules for the United States District Court for the Central District of California, and Federal Rule of Civil Procedure 26, counsel for all parties conferred in good faith to agree on a conference report and discuss the issues required by Rule 26(f) on May 17, 2018.

Plaintiffs GEOFFREY FRIEDMAN, JAY KENNEL, YVETTE MORGAN, TIM OSBORNE and WILLIAM WETMORE ("Plaintiffs") were represented by their attorney of record, Jeffrey M. Goldman of Pepper Hamilton LLP, who appeared in person.

Defendants GLOBAL PAYMENTS, INC., and HEARTLAND PAYMENT SYSTEMS, LLC (collectively, "Defendants" or "Heartland") were represented by their attorney of record, Kristapor Vartanian of Kabat Chapman & Ozmer LLP, who appeared in person, as well as Steven J. Rosenwasser of Bondurant Mixson & Elmore LLP, who appeared by phone.

The following was discussed and, as the case may be, agreed to:

A.  **Statement of the Case**:

1.  *By Plaintiffs:*

Plaintiffs were employed by Heartland Payment Systems, Inc., an electronic payment processing company.  In April 2016, Heartland Payment Systems, Inc. was acquired by via a merger with Global Payments, Inc. another electronic payment processing company and, out of that merger, Global created a wholly owned subsidiary Heartland Payment Systems, LLC.  In connection with their employment, Plaintiffs entered into employment agreements with Heartland Payment Systems, Inc. and, at certain points thereafter, Partial Purchase Commission Agreements ("PCPAs").  After the merger, Plaintiffs' employment continued with Heartland under the terms of the employment agreements and new PCPAs with Heartland.  The employment agreements and PCPAs incorporated by reference Heartland's sales policies that set forth the manner in which the Plaintiffs were paid.  Heartland's PCPAs were not all voluntary.  Rather, the majority of

Heartland's PCPAs were "forced buyouts" where Heartland forced its employees to sell back a portion of their portfolios in order to reduce their account receivables.

The Plaintiffs did not receive a salary at Heartland. Rather, they were 100% commissioned sales employees that were paid "residual commissions" once per month. The residual commission were calculated based upon the amount of "margin" or revenues that each merchant in the Plaintiffs' merchant portfolios paid to Heartland for processing payments as more fully set forth and explained in various Heartland sales policies. Pursuant to the employment agreements and Heartland's sales policies, Plaintiffs were entitled to continue to receive residual commissions, even after their employment ended, provided that the merchants they signed for Heartland continued to use Heartland's services. Indeed, a feature of Heartland employment that it touts in an effort to induce sales employees to joint Heartland is the "vested" nature of the residual commissions in that sales employees are promised a "lifetime" stream of residual commissions. In addition to the manner in which Plaintiffs were to be paid residual commissions, the employment agreements and PCPAs included post-employment restrictive covenants.

This primary issues in this case involve (1) whether Heartland has been properly paying Plaintiffs their "lifetime" residual commissions after they resigned from Heartland; and (2) whether the post-employment restrictive covenants are enforceable. Plaintiffs allege that since they left Heartland and joined a competitor, Above and Beyond Business Tools and Services for Entrepreneurs, Inc. ("Beyond"), their residual commissions have dramatically and inexplicably decreased. Unlike when they were employed by Heartland, they no longer have access to information necessary to determine whether their residual commissions are being properly calculated or, as suspected, Plaintiffs' commissions are being improperly reduced in violation of their agreements and company policies in order to penalize them for leaving Heartland and joining a competitor. Plaintiffs have requested complete information from Heartland in this regard, but it has refused on

2

**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**

the grounds that it will not give its former employees access to "confidential information" including information that its merchants deem confidential.  In this regard, Heartland's definition of what is confidential is overly broad and covers almost everything relating Heartland's business and merchants, including information that Heartland files publicly and discloses in SEC filings and information that its merchants are not required to keep confidential.  In addition, the Plaintiffs' post-employment restrictive covenants, including a prohibition on soliciting Heartland merchants, are unenforceable as a matter of California law.

　　　2.　**By Defendant:**

Plaintiffs are former employees of Heartland Payment Systems, LLC ("HPS") who now work for HPS' competitor, Beyond.  Although Plaintiffs have no evidence that HPS has underpaid them (it has not), Plaintiffs seek an accounting purportedly to determine whether HPS has properly calculated and paid their residual commissions.  Notably, the information Plaintiffs seek is highly confidential information regarding HPS and its customers, including, but not limited to, information regarding HPS' revenues, costs and profits and the amount of credit card processing engaged in by HPS' customers (who do not anticipate or desire HPS to share their confidential financial information with former HPS employees).  Plaintiffs also seek a declaration that the restrictive covenants they contractually agreed to are invalid.

Plaintiffs' claims are all governed by valid and enforceable forum selection clauses contained within their employment agreements, which require Plaintiffs to bring their claims in New Jersey.  HPS has filed a Motion to Dismiss or Transfer to enforce those clauses, with a scheduled hearing date of June 21, 2018.

It is worth noting that Plaintiffs' claims above regarding their PCPAs are false.  PCPAs are not entered into as a condition of employment.  Rather, PCPAs are entirely voluntary documents that are entered into only when an employee requests a "buy out."  Plaintiffs statement that "the majority of the PCPAs were 'forced buyouts' where Heartland forced its employees to sell back a portion of

3

their portfolios in order to reduce their account receivables" is false.  While HPS has engaged in "forced buybacks," as Plaintiffs are well aware, HPS does not require a PCPA to be signed in that instance.  And, regardless, HPS does not require the PCPA to be signed in order to remain employed (as opposed to conducting a buyout).  If Plaintiffs persist with that claim, which has no factual support, HPS intends to seek Rule 11 and other appropriate sanctions.

Finally, HPS denies that it refused to provide Plaintiffs with the information they are seeking in this case.  HPS has repeatedly offered Plaintiffs information sufficient to determine that they were properly paid commissions so long as certain processes are in place to ensure that the information is kept confidential and not used by Plaintiffs who now work for HPS' competitor; *e.g.*, the data will be provided with an "attorneys' eyes only" designation to Plaintiffs' counsel or their independent accountants.  Plaintiffs refuse to respond to HPS' offer.

### B.   <u>Subject Matter</u>

Defendants removed this action to this Court, and the parties agree that federal jurisdiction exists in this matter over all causes of action because the Plaintiffs, on the one hand, and Defendants, on the other hand, hold completely diverse citizenship and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332.  However, while Defendants do not contest federal court jurisdiction, they do contest jurisdiction in California.  Pursuant to valid forum selection clauses in Plaintiffs' contracts, this matter should have been brought in New Jersey.

**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**

C.   **Legal Issues:**

1.   ***By Plaintiffs:***

(a)  Are Defendants liable for unpaid wages in the form of residual commissions to Plaintiffs – both retroactively and prospectively – as well as related penalties?  If so, how much is due to Plaintiffs?

(b) Are Defendants liable for paystub violations, as well as related penalties?  If so, how much is due to Plaintiffs?

(c) Are Plaintiffs entitled to an accounting – both retroactively and prospectively – with respect to information concerning Defendants' calculation and payment of Plaintiffs' vested monthly residual commissions?

(d) Are Plaintiffs bound by restrictive covenants with Defendants?

(e) Under California Labor Code section 925, must this dispute be adjudicated in California?

2.   ***By Defendant:***

(a) Are Plaintiffs bound by the forum selection clauses in their employment contracts?

(b) Can Plaintiffs identify any contract or law that permits them access to their former employer's (and former employer's customers) highly confidential information in order to purportedly confirm that they were properly paid commissions, particularly when they have no proof of underpayment?

(c)  Are Plaintiffs entitled to an accounting?

(d) Does California or New Jersey law apply to Plaintiffs' claims?

(e) Are Plaintiffs' restrictive covenants enforceable?

(f) Have Plaintiffs fully complied with their employment agreements such that they have standing to bring and meet the elements to bring their claims?

(g) Is Global a proper party to this suit and has it engaged in any alleged wrongdoing?

**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**

**C.** **Parties, Evidence, etc . . . :**

1. ***By Plaintiffs:***

Plaintiffs identify the following parties, percipient witnesses, and key documents on the main issues in this case:

*Parties*

Plaintiffs are Geoffrey Friedman, Jay Kennel, Yvette Morgan, Tim Osborne, and William Wetmore.

Defendants are Global Payments, Inc. and Heartland Payment Systems, LLC.

*Percipient Witnesses*

Percipient witnesses in this action include:

- Plaintiffs and Defendants;
- Agents of Heartland in the sales compensation department;
- Agents of Heartland involved in the establishment, amendment and enforcement of employment agreements, PCPAs and sales policies;
- Agents of Heartland who have taken over accounts previously handled by any of the Plaintiffs;
- Agents of Heartland who reported to Plaintiffs;
- Agents of Heartland to whom Plaintiffs reported;
- Agents of Heartland to whom Plaintiffs have complained about reductions in compensation;
- Vincent Lombardo;
- Anthony Giardino; and
- Joan Juskiw.

Plaintiffs reserve their right to supplement or amend this list as appropriate.

*Key Documents*

- Employment agreements executed by Plaintiffs;
- Partial Commission Purchase Agreements executed by Plaintiffs;
- Heartland's sales policies (original and revised);

6

- Heartland's Sales and Compensation Manual or other written, related instructions;
- Heartland's payroll records that pertain to Plaintiffs;
- Heartland's attrition reports;
- Heartland's true-up detail reports;
- Heartland's A.R. tracking reports;
- Documents identifying those merchants who used to be serviced by Plaintiffs while at Heartland, who were reassigned to other employees of Heartland;
- Documents sufficient to calculate margins and residuals vis-à-vis merchants who used to be serviced by Plaintiffs while at Heartland;
- All communications concerning the reassignment of accounts that used to be serviced by Plaintiffs while at Heartland; and
- Communications regarding approved exceptions to Heartland's payment policies.

Plaintiffs reserve their right to supplement or amend this list as appropriate.

2.  ***By Defendants:***

Defendants identify the following parties, percipient witnesses, and key documents on the main issues in this case:

***Parties***

Plaintiffs are Geoffrey Friedman, Jay Kennel, Yvette Morgan, Tim Osborne, and William Wetmore.

Defendants are Global Payments Inc. and Heartland Payment Systems, LLC.

***Percipient Witnesses***

Percipient witnesses in this action include:

- Plaintiffs and Defendants;
- Corporate representatives knowledgeable of the calculation and payment of Plaintiffs' residuals;

**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**

- Persons with knowledge of Plaintiffs' compliance or lack of compliance with their employment agreements;
- Persons with whom Plaintiffs have discussed their purported claims, including persons employed by Beyond;
- Merchants Plaintiffs solicited or managed located in, or providing goods or services in, locations outside of California.

Defendants reserve their right to supplement or amend this list as appropriate.

### *Key Documents*

- Employment agreements executed by Plaintiffs;
- Documents relating to or discussing Plaintiffs' compliance or lack of compliance with their employment agreements;
- Documents relating to Plaintiffs' solicitation of or work with merchants located outside of California;
- Data relating to Plaintiffs' residual commissions.

Defendants reserve their right to supplement or amend this list as appropriate

### E.   __Insurance__:

There is no insurance involved in this case.

### F.   __Magistrate Judge__:

The parties do not consent to a magistrate judge presiding over this action for all purposes.

### G.   __Discovery__

### 1.   *By Plaintiffs:*

Initial disclosures will be made within by June 11, 2018.

Plaintiffs anticipate engaging in full written and deposition discovery.  In particular, Plaintiffs anticipate propounding document requests, interrogatories, and requests for admission with respect to Plaintiffs' claims, as well as to any

8

counterclaims or affirmative defenses that may be raised.  Likewise, Plaintiffs
anticipate deposing Mr. Lombardo; Mr. Giardino; Ms. Juskiw; any identified
employees of Defendant Heartland Payment Systems, LLC who may hold relevant
percipient knowledge regarding Plaintiff's claims; and Defendant Heartland
Payment Systems, LLC's Rule 30(b)(6) designee.

Plaintiffs reserve the right to present expert testimony.

To the extent further investigation reveals the need for additional discovery,
Defendants reserve their rights to pursue that discovery.

The parties have discussed and anticipate that a protective order may be
required in connection with disclosure or discovery in this case.  Plaintiffs agree to
utilize the form of protective order available on the website of the Magistrate Judge
assigned to this action, Judge Frederick Mumm (http://www.cacd.uscourts.gov/
honorable-frederick-f-mumm).

Plaintiffs propose the following discovery schedule:

- Fact Discovery Cut-off: <u>December 31, 2018</u> (last day for any fact
  discovery responses to be served, fact discovery motions to be heard,
  and any percipient witness depositions to be concluded);

- Expert Witness Disclosures (Initial):  <u>January 30, 2019</u>;

- Expert Witness Disclosures (Rebuttal): <u>March 1, 2019</u>;

- Expert Discovery Cut-Off (last day for any expert depositions to take
  place): <u>March 21, 2019.</u>

2.    ***By Defendants:*** Defendants' position is that it is premature to establish
a discovery plan or agree to discovery deadlines, given their  pending motion to
dismiss or transfer venue (against the first amended complaint), which is scheduled
for hearing on June 21, 2018.  Defendants believe it is inefficient to agree on a
schedule now, before the threshold question of where this action will be litigated is
resolved.  Defendants kindly request that the Court continue the Scheduling
Conference to June 21, 2018, to be held after Defendants' motion hearing.  In the

event that the Court disagrees and elects to proceed with discovery scheduling now, Defendants propose the following:

- Fact Discovery Cut-off: <u>February 28, 2019</u> (last day for any fact discovery responses to be served, fact discovery motions to be heard, and any percipient witness depositions to be concluded);
- Expert Witness Disclosures (Initial):  <u>March 8, 2019;</u>
- Expert Witness Disclosures (Rebuttal): <u>April 5, 2019;</u>
- Expert Discovery Cut-Off (last day for any expert depositions to take place): <u>April 26, 2019</u>

**H.**   <u>**Motions:**</u>

1.   ***By Plaintiffs:***

Plaintiffs reserve the right to file any Motions for Partial or Total Summary Judgment; Motions to Amend to account for former employees of Heartland who are discovered and wish to join this litigation; and any other appropriate motions, including discovery motions, *Daubert* motions, and motions *in limine.*

2.   ***By Defendants:***

Concurrently with the filing of this Joint Report, Defendants will be filing their motion to dismiss or, in the alternative, transfer venue to New Jersey based on forum selection provisions, with the motion hearing to be scheduled for June 21, 2018.  Defendants may also file discovery motions, *Daubert* motions, *motions in limine* and dispositive motions.

**I.**   <u>**Class Certification:**</u>

Not applicable.

**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**

**J.**   **Dispositive motions:**

1.   *By Plaintiffs:*

Plaintiffs proposed a dispositive motion cut-off date (i.e., the last date for a dispositive motion to be heard) of <u>April 22, 2019</u>.

2.   *By Defendants:*

Defendants propose a dispositive motion cut-off date (i.e., the last date for a dispositive motion to be heard) of <u>May 31, 2019</u>.

**K.**   **Settlement/Alternative Dispute Resolution:**

1.   *By Plaintiffs:*

The parties, through counsel, have discussed the possibility of Heartland providing documentation in the form of commission reports pertaining to accounts that Plaintiffs previously serviced, albeit with the redaction of merchant names (with such merchant identities being made available to counsel on an Attorneys' Eyes Only basis).  Defendants have not agreed to provide such reports on a rolling basis going forward, but have agreed to produce on an "as needed" basis.  This information is not sufficient for Plaintiffs' to accurately evaluate their commission payments.  For example, similar data has been produced by Heartland with respect to other former employees, and the data contained errors.  Also, while the information in the reports may enable Plaintiffs' to calculate commissions, those calculations are limited in that they are based upon the sales data (i.e. merchants' gross margin paid to Heartland) without any meaningful way for Plaintiffs to test that data.  That data does not address the issue of how or why accounts statuses may or may not have changed, nor the conduct of Defendants related thereto.  Moreover, Plaintiffs should not have to retain and pay counsel or accounting experts to analyze information regarding the calculations of their commissions.  Simply stated, Plaintiffs need access to the same information they had prior to separating from Heartland which, since Heartland promised that they own or have an equity interest in their merchant portfolio, is a reasonable request

11

1   No monetary settlement talks have occurred.

2   Plaintiffs do not request a settlement conference with the assigned magistrate

3   judge, but are amenable to private mediation.

4   **2.   *By Defendants:***

5   Defendants have offered Plaintiffs the very information they claim they need

6   (it would be in the same form as produced in other similar cases pending in New

7   Jersey; *i.e.*, *Volrath* and *Bradfield*).  Any claim by Plaintiffs that the data was

8   incorrect is false (indeed, Defendants hereby request that Plaintiffs identify any

9   factual support they have for that claim).  Moreover, Defendants should not be

10  required to pay for an accounting that is unnecessary and which is not based on any

11  factual evidence that Defendants underpaid any Plaintiff.  Defendants are not

12  required to pay for an accounting based on Plaintiffs utter (and incorrect)

13  speculation.  Defendants' only conditions are (1) the case is stayed for 120 days so

14  Defendants can gather and produce the information, Plaintiffs can review the

15  information, and the parties can meet and confer regarding any concerns about the

16  information; and (2) portions of the data that would allow Plaintiffs to identify

17  specific merchants would be produced as "attorneys' eyes only."  That is, Plaintiffs'

18  counsel and their independent accountants can review all of the data, while

19  Plaintiffs themselves would get all of the data except those parts identifying

20  merchants since it is highly confidential to HPS and its customers.  Plaintiffs have

21  refused this offer.

22  Defendants do not request a settlement conference with the assigned

23  magistrate judge and are not amenable to private mediation.  Defendants are

24  amenable to the Court Mediation Panel.

25

26

27

28

12

**L.** **Pretrial Conference and Trial:**

**1.** *By Plaintiffs:*

Plaintiff proposes that the pre-trial conference take place on <u>May 6, 2019</u>, and that the trial take place on <u>May 20, 2019</u>.  Plaintiffs have asserted claims for unpaid wages and paystub violations, all of which are properly tried by a jury.

**2.** *By Defendant:*

Given the nature of Plaintiffs' claims, there is no trial.  A claim for accounting is not a triable claim.  To the extent a trial occurs, it should be a bench trial given the nature of Plaintiffs' claims and the jury trial waiver in Plaintiffs' employment agreements.  Further, if there is a trial, Defendants propose a pre-trial conference take place on June 14, 2019 and the trial take place on June 24, 2019.

**M.** **Trial Estimate:**

**1.** **By Plaintiffs:**

Plaintiffs have demanded a jury trial, and contemplate calling at least six (6) witnesses (all Plaintiffs plus one expert).  Plaintiffs also reserve the right to call: (i) representatives of Defendants to the extent not called by Defendants themselves; and (ii) merchants on whose accounts Plaintiffs claims are based.  Plaintiffs contemplate trial lasting 7 to 10 days, including voir dire, opening statement, and closing argument.

**2.** **By Defendants:**

See above.

**N.** **Trial Counsel:**

**1.** **By Plaintiffs:**

Jeffrey M. Goldman of Pepper Hamilton LLP will represent Plaintiffs at trial. Also, Plaintiffs anticipate submitting an application to appear *pro hac vice* on behalf of Jeffrey Carr, also of Pepper Hamilton LLP, to serve as co-trial counsel.

13

**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**

**2.**  *By Defendants:*

See above.  Plaintiffs have not asserted any triable claims.  If a trial occurs, Defendants will determine at that time who will be trial counsel, but anticipate some or all counsel of record will represent Defendants at trial.

**O.**  **Independent Expert or Master:**

**1.**  *By Plaintiffs:*

Plaintiffs do not believe an independent expert or master should be considered.  To the extent Defendants seek the appointment of an independent master, as opposed to retaining their own expert, Defendants should bear the cost of that expert under Federal Rule of Civil Procedure 53.  Otherwise, information should be exchanged in the ordinary course of discovery in this action, subject to any order governing the confidentiality of documents to which the parties may stipulate, which alleviates any third party confidentiality concerns.

**2.**  *By Defendants:*

Defendants intend on asking the Court to appoint a C.P.A. as an independent expert or master.  Defendants believe that if Plaintiffs want an accounting, they can produce the data to the independent master, who can review the data while preserving the confidential nature of the data and protecting it from disclosure to Plaintiffs (who work for HPS' competitor).  Moreover, HPS' customers do not expect or anticipate their confidential financial information to be produced to HPS' former employees.

**P.**  **Other Issues:**

As noted above, Defendants will be filing a motion to dismiss or, in the alternative, transfer venue by May 24, 2018, with a scheduled hearing date of June 21, 2018.

## C.D. Cal. Civ. L.R. 5-4.3.4 Attestation

Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), the e-filer of this document attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 24, 2018

Respectfully submitted,

**PEPPER HAMILTON LLP**

By: /s/ Jeffrey M. Goldman

Jeffrey M. Goldman
Attorney for Plaintiffs

Dated: May 24, 2018

Respectfully submitted,

**KABAT CHAPMAN & OZMAN LLP**

By: /s/ Kristapor Vartanian

Kristapor Vartanian
Attorney for Defendants

**JOINT SCHEDULING CONFERENCE REPORT PURSUANT TO RULE 26(F)**